UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NIKKI LEWIS,

                           Plaintiff,

                                                            12-cv-01317
        v.                                              (WGY)

CAROLYN W. COLVIN,
Acting Commissioner,
Social Security Administration,

                           Defendant.[1]

---

WILLIAM G. YOUNG, United States District Judge[2]

**DECISION and ORDER**

**I.    INTRODUCTION**

    Plaintiff Nikki Lewis ("Lewis") brings this action against Carolyn W. Colvin, the Acting Commissioner of the Social Security Administration (the "Commissioner" or the "Agency"), seeking the reversal of the Commissioner's determination that Lewis is not entitled to disability insurance benefits and supplemental security income pursuant to Titles II and XVI of

---

    [1] Michael J. Astrue, the former Commissioner of the Social Security Administration, was the original named defendant in this matter. Compl., ECF No. 1. On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration. Clerk's Notes, June 12, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), she has been substituted as the named defendant. Fed. R. Civ. P. 25(d).

    [2] Of the District of Massachusetts, sitting by designation. ECF No. 16.

the Social Security Act (the "Act"). Compl. ¶ 1, ECF No. 1. For the reasons set forth below, the Court REMANDS this case for further proceedings.

A. **Procedural History**

On May 24, 2010, Lewis filed a Title II application for disability insurance benefits, and a Title XVI application for supplemental security income. Administrative R. ("Admin. R.") 16, ECF No. 9. The Agency denied Lewis's applications on August 11, 2010, and Lewis filed a written request for a hearing several weeks later. Id. That hearing, which Lewis attended, was held on June 2, 2011. Following the hearing, Administrative Law Judge Thomas Tielens ("hearing officer") denied her applications on June 22, 2011. Id. at 16, 24. Lewis appealed to the Agency's Appeals Council, which denied her claim on August 9, 2012. Id. at 1, 6.

Lewis timely appealed to the district court on August 23, 2012. Compl. After the Commissioner produced the administrative record, Lewis filed her brief on April 4, 2013. Pl.'s Br. Pursuant Gen. Order No. 18 ("Pl.'s Br."), ECF No. 13. The Commissioner opposed on May 20, 2013. Def.'s Br. Pursuant Gen. Order No. 18 ("Def.'s Br."), ECF No. 14.

B. **Factual History**

The bulk of the factual background at issue in this case is not relevant to this opinion. For the sake of concision, and in

order to protect the privacy of the parties as much as possible, this Court summarizes only those facts necessary to understand the legal issues involved.

Lewis, who was 22 years old at the date of the 2011 hearing, attended school through eleventh grade, though she did not finish high school. Admin. R. 33. During her schooling, she was subject to an individualized education plan ("IEP"). Id. at 134-41. She was also administered a WISC-IV IQ test, where she received a full scale score of 73, and sub-scores ranging from 67 (for perceptual reasoning) to 91 (for verbal comprehension). Id. at 136. She also received some type of counseling during her schooling, though the administrative record is not precisely clear about the type of program or how frequently it was offered. See id. at 144. Lewis said that after leaving school, she worked as a "privately hired housekeeper," who "would decide what jobs to take and what [her] rate of pay would be for each job, depending on the duties for that particular home." Id. at 145. At the hearing, Lewis reported suffering from depression, stress, anxiety, and mood swings. Id. at 41-42, 44.

## II. LEGAL STANDARDS

### A. Standard of Review

As this Court recently summarized:

> A district court reviewing a decision of the Commissioner to deny social security disability benefits must make two inquiries. The court must first determine whether the Commissioner applied the correct legal standards to an application for benefits and then must decide whether the Commissioner's findings of fact are supported by substantial evidence.

Walsh v. Colvin, No. 12-cv-00933 (WGY), 2014 WL 1239117, at *6 (N.D.N.Y. Mar. 25, 2014) (citing Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009)). Substantial evidence, in turn, is a permissive standard, requiring only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal citation and quotation marks omitted); see also Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (observing that substantial evidence is "a very deferential standard of review - even more so than the 'clearly erroneous' standard").

The reviewing court must, however, be conscious of the fact that both the legal and factual inquiries must be satisfied: "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards, even if the ultimate decision may be arguably supported by substantial evidence, the Commissioner's decision may not be affirmed."

4

Walsh, 2014 WL 1239117, at *7 (quoting Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.)) (internal quotation marks omitted); see also Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

**B.  Disability Standard**

In order to determine whether an applicant is disabled under the meaning of the Act, the Social Security Administration regulations lay out a five-step process the hearing officer must use. As the Second Circuit summarized, they are:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014). The claimant bears the burden of proof on the first four steps, and the agency bears the burden on the final step. Id.

**III. THE HEARING OFFICER'S DECISION**

In his decision, the hearing officer applied the five-step framework discussed above. First, he concluded that Lewis had not engaged in substantial gainful activity during the time period in question. Admin. R. 18. Second, he concluded that

5

Lewis had two severe impairments: mood disorder and post traumatic stress disorder. Id. at 18-19.

Third, the hearing officer determined that Lewis's impairments did not meet or medically equal an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Id. at 19-20. In so doing, he first evaluated the so-called "paragraph B" criteria, which require Lewis to have a "marked restriction" in at least two of four domains. He considered each domain in turn, and concluded that Lewis had mild restrictions in activities of daily living and social functioning; moderate difficulties "[w]ith regard to concentration, persistence, or pace," id. at 19; and no episodes of decompensation. Id. at 19-20. The hearing officer also considered "paragraph C" criteria, but concluded that the evidence failed to meet the standards articulated in "paragraph C." Id. at 20.

Also as part of step three, the hearing officer considered whether Lewis met the requirements of "Listing 12.05C," which covers intellectual disability. Id. at 20. An applicant satisfies the 12.05C criteria, and is therefore considered disabled, when she has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related

limitation of function." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.05(C). The hearing officer concluded that Lewis's IQ was sufficiently high that she did not meet that standard. Admin. R. 20.

Fourth, the hearing officer concluded that Lewis had "the residual functional capacity to perform a full range of work at all exertional levels," so long as she was "limited to work performing simple, routine tasks." Id. In so doing, he considered Lewis's own testimony, as well as the conclusions of several professionals: a consultative examiner, Dr. Sara Long, Ph.D.; a licensed social worker, Ms. Esther McGurrin; and Lewis's psychiatrist, Dr. Robert Webster, M.D. Id. at 21-23. The hearing officer recognized that Lewis had "severe medically determinable impairments which limit her functionality," but concluded that she would still be capable of performing work, and thus was not disabled within the meaning of the Act. Id. at 23-24. Specifically, the hearing officer concluded that Lewis was capable of performing past relevant work as a housecleaner or housekeeper. Id. at 23.

## IV. ANALYSIS

Lewis challenges the hearing officer's ruling on two grounds. First, that the hearing officer did not properly acknowledge the opinion of a treating source, Dr. Robert

Webster. Second, that the hearing officer did not properly consider whether Lewis's IQ was 70 or less. Pl.'s Br. 1.

**A.   Dr. Webster's Opinion**

Lewis argues that the Agency erred by not considering the June 7, 2011 opinion of Dr. Robert Webster, Lewis's psychiatrist. Pl.'s Br. 7-9. This opinion, where Dr. Webster co-signed the May 31, 2011 opinion of Esther McGurrin, LCSW, concluded that Lewis had "marked" limitations across various domains. Admin. R. 328-30. In his decision, the hearing officer considered Ms. McGurrin's May 2011 opinion and accorded it "little weight, given that [it is] inconsistent with the providers' own treatment notes as well as the record as a whole." Id. at 22. Although the hearing officer mentioned some of Dr. Webster's treatment of Lewis, he did not mention Dr. Webster's June 2011 co-signature of Ms. McGurrin's May 2011 opinion, even though the Agency received the co-signed opinion eight days before the hearing offer issued his decision. Admin R. 22, 327.

The Court cannot tell from the record whether the hearing officer received and ignored the opinion containing Dr. Webster's co-signature, or whether he failed to include the co-signed opinion in the record at all. It makes no difference, however, because either scenario warrants a remand.

### 1. The Treating Physician Rule

Lewis argues that the hearing officer failed to give Dr. Webster's co-signature appropriate weight under the "treating physician rule." See Pl. Br. 7-8. The Court agrees. When considering an applicant's symptoms, Social Security Administration regulations require the hearing officer give "[c]ontrolling weight . . . to a treating source's opinion on the nature and severity of a claimant's impairments where it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" Blasco v. Comm'r of Soc. Sec., No. 5:13-cv-576 (GLS), 2014 WL 3778997, at *5 (N.D.N.Y. July 31, 2014) (Sharpe, C.J.) (quoting 20 C.F.R. § 404.1527(c)(2)). If the hearing officer "refuses to give controlling weight" to such a medical opinion, he still "must consider various 'factors' in deciding how much weight to give the opinion," Petrie v. Astrue, 412 F. App'x 401, 406 (2d Cir. 2011), and must give "good reasons" for the relative weight given to the treating source's views, Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). In this case, the treating physician signed on to an opinion authored by social worker. The issue, therefore, is whether the hearing officer was obligated to evaluate the opinion under the treating physician rule. He was.

This case is nearly identical to VanGorden v. Astrue, No. 3:11-cv-1044 (GLS), 2013 WL 420761 (N.D.N.Y. Feb. 1, 2013) (Sharpe, C.J.), where the hearing officer had not considered the fact that the treating source (in that case, also Dr. Webster) had co-signed an evaluation by a social worker (also, as it turns out, Ms. McGurrin). Chief Judge Sharpe reasoned:

> Although the [hearing officer] cited to all of the medical records and specifically noted that [the claimant] was evaluated by Dr. Webster, he failed to weigh Dr. Webster's opinion as to [claimant's] functional limitations. The Commissioner argues that the [hearing officer] considered the questionnaire co-signed by Dr. Webster and determined that it only represented the opinion of McGurrin. However, it is unclear from the [hearing officer]'s discussion of the questionnaire whether he considered the co-signature of Dr. Webster or that the opinion given was that of Dr. Webster as well as McGurrin. The point is significant because of the consideration a treating physician's opinion is entitled to.
>
> The Commissioner argues that, even if the questionnaire represented the opinion of Dr. Webster, substantial evidence supports the [hearing officer]'s decision to afford it little weight. The court does not agree. Remand for further administrative proceedings is appropriate because the [hearing officer] failed to explicitly consider and weigh Dr. Webster's opinion.

VanGorden, 2013 WL 420761, at *2-3 (internal citations omitted). This conclusion accords with that of other district courts within the Second Circuit, which also remanded cases when the hearing officer failed to consider the co-signature of a treating source. See, e.g., Godin v. Astrue, No. 3:11-cv-881 (SRU), 2013 WL 1246791, at *2-3 (D. Conn. Mar. 27, 2013); Payne

10

v. Astrue, No. 3:10-cv-1565(JCH), 2011 WL 2471288, at *5 (D. Conn. June 21, 2011).

The reasoning of VanGorden applies here -- and probably even more so, because the hearing officer did not explicitly reference Dr. Webster's June 2011 co-signed opinion at all. See Burgin v. Astrue, 348 F. App'x, 646, 649 (2d Cir. 2009) ("The [hearing officer]'s consideration must be explicit in the record."). Remand is appropriate because the hearing officer failed to consider and weigh Dr. Webster's opinion. VanGorden, 2013 WL 420761, at *3.

### 2. The Hearing Officer's Failure to Consider Evidence Submitted After the Hearing

The record reflects that Lewis submitted Dr. Webster's co-signature to the hearing officer on June 14, 2011, 12 days after the hearing and eight days before the hearing officer issued a decision. Admin R. 13, 16, 327.[3] Lewis argues that the hearing officer erred by failing to consider Dr. Webster's cosignature. Pl.'s Br. 7. The Court agrees.

---

[3] Ms. McGurrin's opinion regarding Lewis's limitations is dated May 31, 2011. Admin R. 330. The administrative hearing was held on June 2, 2011. Admin R. 16. Dr. Webster co-signed Ms. McGurrin's opinion on June 7, 2011. Admin R. 330. Lewis faxed Dr. Webster's co-signature on June 14, 2011, eight days before the hearing officer issued his opinion. Admin. R. 13, 327. Dr. Webster's co-signature does not appear on the hearing officer's exhibit list, but the record does reflect that the hearing officer received a post-hearing correspondence from Lewis's representative on June 20, 2011. Admin R. 27-28.

Under the framework laid out in Donaldson-Rudd v. Astrue, No. 0308-CV-01626CFDTPS, 2009 WL 2148297, at *1 (D. Conn. July 17, 2009), "a district court may remand a final decision of the Commissioner and order the Commissioner to consider additional evidence" if the evidence is material and "there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Id., citing 42 U.S.C. § 405(g). Under Second Circuit case law, to warrant a remand, the plaintiff must demonstrate (1) that the evidence is new (meaning that it is not merely cumulative); (2) that the evidence is material (meaning that it presents a reasonable possibility that it would have influenced the Commissioner to decide the case differently); and (3) that there is good cause for claimant's failure to present the evidence earlier. Id. (citing Jones v. Sullivan, 949 F.2d 57, 60 (2d Cir. 1991)).

This Court concludes that all three factors are met. First, as articulated more fully above, the hearing officer must consider a treating physician's co-signature as an opinion authored by the treating physician himself, and must accord it the proper weight. Although the hearing officer in this case did consider Ms. McGurrin's May 2011 opinion, he did not consider the opinion under the treating physician rule. Because Dr. Webster's co-signature added the weight of the treating physician rule to Ms. McGurrin's opinion, his co-signature

amounts to "new" evidence. Second, the Court concludes that the co-signed opinion is material, in that it may have caused the hearing officer to decide the case differently. After all, the co-signature reflects the treating physician's opinion that the claimant had marked difficulties in various categories. Lastly, there is good cause for Lewis's failure to present the evidence at an earlier date: Dr. Webster signed onto Ms. McGurrin's opinion after the administrative hearing, so the claimant could not have presented the evidence at or before that time. Under these circumstances, a remand is warranted so the hearing officer can determine, consistent with the treating physician rule, whether he should modify or affirm his prior decision. Id., at * 3; see also Ortega v. Astrue, No. EDCV 12-00431-JEM, 2012 WL 6093700, at *3 (C.D. Cal. Dec. 6, 2012) (remanding hearing officer's decision because of failure to consider evidence presented subsequent to hearing but prior to decision). Compare with Neal ex rel. A.T. v. Astrue, No. 2:10-CV-324-FTM-DNF, 2011 WL 4459177, at *7 (M.D. Fla. Sept. 26, 2011) (finding no error by the hearing officer because she considered and discussed evidence submitted after the hearing but prior to her decision).

Accordingly, this matter must be REMANDED to the hearing officer for proper consideration of Dr. Webster's opinion.

## B. IQ Score

Second, Lewis challenges the hearing officer's determination that Lewis's IQ was insufficient to meet the standards of Listing 12.05(C). See Pl.'s Br. 6.

As discussed earlier, Listing 12.05(C) requires the applicant, inter alia, to have a "valid verbal, performance, or full scale IQ of 60 through 70." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). When an IQ test has multiple sub-parts, Social Security Administration Regulations direct the hearing officer to consider the lowest sub-score. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c) ("In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05."). In his opinion, the hearing officer recognized that Lewis's perceptual score[4] was under 70, but concluded that, on balance, her IQ was above the 12.05(C) threshold:

> The [hearing officer] also notes that although the claimant's representative has alleged that the claimant would meet listing 12.05C, however, the evidence in the record indicates that the claimant was tested in 2005 and assessed a full scale IQ of 73. Although her perceptual score was 67, her verbal score was 91, memory 77, and she was assessed a score of 78

---

[4] "Perceptual score" appears to be the current name of the "performance score" for the WAIS-IV test. See Pl.'s Br. 4; Admin. R. 38.

14

> in processing speed. In her report, Dr. Sara Long, the consultative examiner noted that this would indicate a borderline level and "would be considered her minimal level of functioning, due to lack of attendance, effort, and motivation for school participation. It would be expected that her natural score might be slightly higher". Additionally, the claimant testified that she was using [marijuana] on a daily basis during that time; this may have affected her scores as well. Moreover, there is no evidence in the record indicating that the claimant suffers from any physical impairment imposing any additional and significant work-related limitation of function. Consequently, the [hearing officer] finds that there is no evidence in the record indicating that the claimant's impairments meets or equals [sic] the criteria for listing 12.05.

Admin. R. 20 (internal citations omitted).

Under Second Circuit case law, the hearing officer "is permitted to reject an IQ score as invalid when it is inconsistent with the record but must explain the basis for that decision." Edwards v. Astrue, No. 5:07-CV-898(NAM/DEP), 2010 WL 3701776, at *5 (N.D.N.Y. Sept. 16, 2010) (Mordue, C.J.); see also Alvarado v. Barnhart, 432 F. Supp. 2d 312, 317 (W.D.N.Y. 2006) (same). Valid scores, though, must generally be accepted. See Miller v. Astrue, No. 3:07-CV-1093(LEK/VEB), 2009 WL 25684571, at *7 (N.D.N.Y. Aug. 19, 2009) (collecting cases).

The standard for determining whether a score is invalid is not particularly demanding. In Edwards, the court rejected a score based on the substance abuse history of the claimant as well as the general functional reports found in the claimant's history. See Edwards, 2010 WL 3701776, at *5; see also Baszto

v. Astrue, 700 F. Supp. 2d 242, 248-49 (N.D.N.Y. 2010) (McAvoy, J.) (considering whether there was evidence of "malingering" in disregarding IQ score).

On balance, the hearing officer's decision in this case is probably sufficient, even though he never explicitly states that the IQ score in question is not valid. Given, however, the fact that this case must be remanded for other reasons, the hearing officer ought consider making a more explicit (and robust) finding about the validity -- or lack thereof -- of Lewis's perceptual score of 67.

## V. CONCLUSION

For the aforementioned reasons, the decision of the Commissioner is REMANDED for proceedings consistent with this opinion.

**SO ORDERED.**

Dated: November 25, 2014

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE